C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
KEVIN PAZMINI,                                             :
                                                           :
                              Petitioner,                  :   **MEMORANDUM**
                                                           :   **DECISION AND ORDER**
                - against -                                :
                                                           :   18-cv-5361 (BMC)
JOHN COLVIN, Superintendent,                               :
                                                           :
                              Respondent.                  :
---------------------------------------------------------- X

**COGAN**, District Judge.

Petitioner *pro se* seeks habeas corpus relief under 28 U.S.C. § 2254 from his state court conviction following a bench trial for attempted first-degree rape, first-degree criminal sexual act, attempted second-degree robbery, and second-degree assault, for which he was sentenced to concurrent terms totaling 25 years' imprisonment. The facts surrounding petitioner's conviction will be set forth below as necessary to address each of petitioner's points of error, but to summarize, he accosted a woman he did not know on the street, dragged her into an alleyway, stripped her and sexually assaulted her, punched her, slammed her head into the wall, and took some of her property. His initial approach was captured on a security camera, and petitioner confessed orally, in writing, and on video, all after Miranda warnings. In addition, while petitioner was in custody awaiting trial, he wrote a letter to a friend admitting to the attempted rape, which was turned over to the police. Finally, DNA gathered from a rape kit was consistent with that of petitioner.

Each of petitioner's points of error are either procedurally barred or without merit, and his petition is therefore denied.

### I. Involuntary Waiver of Jury Trial

#### A. *Background*

Petitioner was originally charged with first-degree rape; first-degree criminal sexual act; second-degree attempted robbery; and second-degree assault. The day before trial, defense counsel advised the trial court that petitioner wanted to waive his right to trial by jury.[1] This was likely because the case against petitioner was airtight, except for his defense that he did not achieve penetration during the attack, and thus could not be guilty of rape under New York law. See N.Y. Penal Law § 130.00(1); People v. Carroll, 95 N.Y.2d 375, 383, 718 N.Y.S.2d 10, 13 (2000).

After administering an oath to petitioner, the trial court advised petitioner that he had a right to a trial by jury, in which the jury would determine the facts and the court would determine the law. The trial court further advised petitioner that if he waived trial by jury, the trial judge would act as the judge of the law and the judge of the facts. After asking petitioner if that was what petitioner wanted to do and receiving an affirmative response, the trial court asked if petitioner was doing so freely and voluntarily after consulting with his attorneys; if petitioner believed that waiving jury trial was in his best interest; and if this was because the case turned on a legal issue (*i.e.*, the technical distinction). Petitioner replied affirmatively. The trial court then asked petitioner if anyone had threatened or coerced him into waiving the jury, and petitioner replied negatively. Petitioner then signed a written waiver of his right to a jury trial, and the trial court made a finding that it was knowingly and voluntarily executed. Following that, the trial court said to petitioner, "there's been some issue regarding your mental situation. Do you understand everything that's transpired in Court?" Petitioner answered "yes."

---

[1] Petitioner was represented by a retained father-son legal team, an arrangement to which he voluntarily consented on the record.

This reference to petitioner's mental condition formed the basis of his argument on direct appeal that the trial court did not sufficiently allocute petitioner on the jury trial waiver to support its finding that the waiver was knowing and voluntary. As the trial court was aware when it accepted the waiver, petitioner's mental history included two suicide attempts. The trial court knew petitioner's mental history because about one year before the trial, petitioner's attorneys had requested a mental status examination pursuant to New York Criminal Procedure Law Article 730 following his most recent suicide attempt. The trial court granted the application, and two doctors examined petitioner. They found that, at the time of the examination, petitioner denied suicidal ideation; he was not being treated with any anti-depressants; and that he was "well organized in his thinking." The doctors concluded that petitioner was fit to proceed to trial and that he had sufficient intelligence and psychiatric health to assist his attorneys and make rational legal decisions.

According to petitioner's appellate counsel, this mental history imposed a constitutional obligation on the trial court to conduct further inquiry into the voluntariness of petitioner's waiver of jury trial. Counsel contended that in light of petitioner's mental history, the trial court should have inquired about mental therapy, level of education, employment history, past criminal history, and familiarity with court proceedings. Appellate counsel conceded that petitioner's trial counsel had failed to preserve this claim, but asked the Appellate Division to reach it under its "interests of justice" jurisdiction.

The Appellate Division rejected the argument on both procedural and substantive grounds:

> The defendant failed to preserve for appellate review his contention that his waiver of the right to jury trial was not knowing, voluntary, and intelligent. In any event, the record does not support the defendant's contention that the waiver was invalid. The defendant executed a written waiver in open court after

3

> allocution by the court, the trial justice approved the waiver, and the circumstances surrounding the waiver supported the Supreme Court's determination that it was made knowingly, voluntarily, and intelligently.

People v. Pazmini, 132 A.D.3d 1015, 18 N.Y.S.3d 359 (2d Dep't 2015) (internal citations omitted), leave to appeal denied, 27 N.Y.3d 1073, 38 N.Y.S.3d 844 (2016).

### B. Analysis

It is a firmly established and regularly applied principle of New York law that to preserve the error of involuntarily waiving a jury, defense counsel must object at the time the waiver is approved (perhaps by demanding a further allocution). If counsel does not, then the defendant's remedy is to challenge his counsel as constitutionally ineffective for failing to object to the inadequate waiver through a N.Y. C.P.L. § 440.10 motion. See, e.g., People v. Johnson, 51 N.Y.2d 986, 435 N.Y.S.2d 713 (1980); People v. Petitbrun, 123 A.D.3d 1057, 1058, 999 N.Y.S.2d 164, 165 (2d Dep't 2014).

The Appellate Division's application of this settled law creates a procedural bar to reviewing the merits of the claim on federal habeas corpus. A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment." Lee v. Kemna, 534 U.S. 362, 375 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)) (emphasis omitted). When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the state court's decision. See, e.g., Coleman, 501 U.S. at 729-30; Murden v. Artuz, 497 F.3d 178, 191-92 (2d Cir. 2007). State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376 (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).

4

Moreover, if a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (noting that state courts "need not fear reaching the merits of a federal claim in an alternative holding" because "[b]y its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law").

Here, petitioner conceded that since his defense counsel failed to object to the adequacy of the jury trial waiver, it was unpreserved for appellate review. As noted above, this was in accordance with well-settled New York law. Because the Appellate Division properly invoked a state procedural ground to reject petitioner's claim, the claim is procedurally barred from review in this Court.

However, a procedurally barred claim can be reviewed in this Court if the petitioner can demonstrate cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. See Coleman, 501 U.S. at 750; Harris, 489 U.S. at 262. The latter avenue, a miscarriage of justice, is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

The first avenue, cause for the default and prejudice therefrom, can be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel[,] . . . that 'some interference by state officials' made compliance impracticable[,] . . . [or that] the procedural default is the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (citing Murray, 477 U.S. at 488)

(alteration in original). Although, in some circumstances, ineffective assistance of counsel can constitute "cause" sufficient to avoid a procedural default, Murray, 477 U.S. at 488-89, the ineffective assistance claim must itself have been exhausted in the state court, Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).

Petitioner brought collateral proceedings in which he claimed his counsel was ineffective for various reasons. These are discussed below. But he never alleged ineffectiveness based on his counsels' failure to insist on a more detailed allocution of the jury trial waiver, and thus he cannot rely on that here. There is no other ground in the record to support a finding of cause and prejudice that would allow avoidance of the procedural bar.

Nor does the trial court's acceptance of the waiver come anywhere near constituting a manifest injustice. Indeed, the fact that petitioner had been mentally evaluated and found competent to assist in his proceedings gave the trial court additional assurance that the waiver was voluntary; it did not, as his appellate counsel argued on appeal, suggest a need for additional questioning. Under any standard of review, the trial court's allocution of the waiver met all the constitutional requirements to ensure that it was voluntary, and thus no manifest injustice occurred.[2]

Petitioner's point of error is therefore rejected as procedurally barred.

---

[2] It is questionable that manifest injustice could ever arise from the acceptance of a jury trial waiver, as it would require petitioner to show at least a reasonable possibility that a jury would have reached a different result than the trial court sitting as finder of fact.

## II. Ineffective Assistance of Trial Counsel

### A. Background

At the end of the bench trial, at a charge conference, the trial court, over defense counsel's objection, added attempted first-degree rape as a lesser included offense to the first-degree rape charge that was already in the indictment. After hearing argument, the trial court acquitted petitioner of first degree rape, but found petitioner guilty of attempted first-degree rape, first degree criminal sexual act, attempted second degree robbery, and second-degree assault. The trial court subsequently sentenced petitioner to concurrent terms totaling 25 years' custody.

Following affirmance of his conviction on direct appeal as discussed above, in a motion filed pursuant to New York Criminal Procedure Law § 440.10, petitioner claimed, among other things, that his trial counsel was ineffective for: (1) not understanding the law relating to the classification of sex crimes; (2) failing to raise an intoxication defense; and (3) advising petitioner not to accept a pretrial 15-year plea offer.[3]

The § 440 court rejected these claims on the merits. It effectively held that trial counsels' understanding of the law concerning sex crimes was adequate, as counsel "obtained an acquittal at trial of the charge of Rape in the First Degree by utilizing a successful strategy." As to the intoxication defense, the § 440 court found that, even accepting petitioner's statement that he had about 10 beers before the attack, there was "no other evidence of defendant's intoxication or any indicia that defendant's actions were anything but intentional." Similarly, as to not accepting the proposed 15-year plea, the § 440 court found that it was "unsupported by any facts and without merit." The § 440 court noted that when petitioner was sent for a mental health exam, petitioner

---

[3] Petitioner also asserted in his § 440 motion that the trial court subjected him to double jeopardy by sentencing him both on attempted robbery and assault. As the § 440 court held, the claim was entirely baseless, as the crimes have different elements. See N.Y. Penal Law § 160.10 (robbery in the second degree); N.Y. Penal Law § 120.05 (assault in the second degree); see also N.Y. Penal Law § 110.00 (attempt to commit a crime).

stressed to the examiner that the case against him was "weak" and he was "trying to get a better deal."

### B. Analysis

Because the § 440 court disposed of these arguments on the merits, its decision attracts the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). That statute requires petitioner to demonstrate that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature," or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow, and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal . . . ." Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 88 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Since Harrington, the Supreme Court has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations. See, e.g., White v. Wheeler, 136 S. Ct. 456,

460 (2015) (quoting Burt v. Titlow, 571 U.S. 12, 19 (2013) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'").

Petitioner's burden is amplified here because the standard for showing ineffective assistance of counsel is itself narrow. The relevant test is set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, petitioner must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (internal quotation marks and citations omitted). Second, under the "prejudice" prong, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 664. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112. Moreover, as the Second Circuit has recently noted, "[t]he prejudice inquiry is . . . ineluctably tied to the strength of the prosecution's evidence." Garner v. Lee, No. 17-78, 2018 WL 5985932 (2d Cir. Nov. 15, 2018).

Petitioner cannot show this level of error, or, for that matter, any level of error, in the § 440 court's decision. As to the failure to raise an intoxication defense, the only fact that petitioner put before the § 440 court was that he consumed alcohol before attacking the victim. The § 440 court was correct in recognizing that consuming alcohol, even in what seems to be a large quantity (and since petitioner did not say over what period of time he was drinking, or whether he regularly drank large amounts, which could diminish its effect on him, the § 440

9

court had nothing else upon which to address the argument), does not grant a license to commit a sexual assault. In addition, the victim testified at trial that she smelled no alcohol on him. Thus, his trial counsel did not err in failing to raise an insufficient defense.

Second, petitioner's argument that his trial counsel did not understand the law of sexual assault is unavailing. As the § 440 court noted, petitioner went to trial facing first-degree rape, which is a class B felony. See N.Y. C.P.L.R. § 110.05(4). By getting an acquittal on that count and a conviction only on attempted rape, the charge of conviction was lowered to a class C felony.[4]

Petitioner's point seems to be that he did not really face a serious risk of conviction on the first-degree rape charge because the victim had not acknowledged penetration. The grand jury apparently thought otherwise. Indeed, the victim testified on direct examination that petitioner had penetrated her (although petitioner's counsel successfully impeached her with an arguably prior inconsistent statement). Moreover, other than the meritless intoxication defense, petitioner has pointed to no way that his trial attorneys could have done better for him than the non-rape, sexual assault charges as to which there was overwhelming evidence. The § 440 court's decision that his counsels' defense was objectively reasonable was therefore not contrary to or an unreasonable application of any Supreme Court decision.

Finally, the § 440 court had a sound basis for concluding that it was petitioner's decision, not his counsels', to reject the 15-year plea offer. First, petitioner offered the most conclusory of statements in claiming that his attorneys had told him not to plead guilty, devoid of particulars as

---

[4] It is true that petitioner faced another Class B felony charge of a criminal sexual act in the first degree, see N.Y. C.P.L.R. § 130.50, and ultimately received the maximum sentence on that charge. Although that statute does not require penetration, is does require oral or anal sexual contact – which was not a forgone conclusion on this record. Moreover, it was not unreasonable for counsel to conclude, based on the overwhelming evidence of at least some sexual contact, that petitioner stood a better chance of getting a sentence below the statutory maximum if he was convicted of one count of sexual contact instead of one count of sexual contact *and* one count of rape.

to time, place or context.  Second, as the § 440 court noted, the record showed that it was petitioner who had stated, during his mental status exam, that he thought the case against him was weak and he was going to try to get a better offer.  The § 440 court's finding that petitioner's version of the facts was not credible is a factual finding that is presumed correct absent clear and convincing evidence to the contrary, see 28 U.S.C. § 2254(e)(1), which is not present here.

### III. Ineffective Assistance of Appellate Counsel

In a *pro se coram nobis* motion, petitioner contended that his appellate counsel on direct appeal was constitutionally ineffective.  According to petitioner, appellate counsel was ineffective for failing to raise the following points: (1) trial counsel was constitutionally ineffective because (a) they should have argued that the felony complaint was insufficient to justify petitioner's arrest and there was no probable cause for his arrest; and (b) they should have argued that the felony complaint and indictment were jurisdictionally defective because these accusatory instruments did not provide sufficient notice of the charges; and (2) the trial court impermissibly amended the indictment to include attempted rape because the evidence was legally insufficient to support first degree rape.  The Appellate Division summarily denied his motion, which is deemed to constitute a denial on the merits.  See Harrington, 562 U.S. at 99-100.

The Strickland standard is also applicable to ineffective assistance of appellate counsel claims.  See Smith v. Robbins, 528 U.S. 259, 285 (2000).  To state a claim of ineffective assistance of appellate counsel, a petitioner must show (1) "that his counsel was objectively unreasonable in failing to find arguable issues to appeal" and (2) "a reasonable probability that, but for his counsel's unreasonable failure to" raise an issue on appeal "he would have prevailed on his appeal." Id. (internal citations omitted).  "To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have

11

been successful before the state's highest court." Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994) (internal quotation marks and alternations omitted).

"In attempting to demonstrate that appellate counsel's failure to raise a state claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (internal quotation marks and citations omitted). Because one of the main functions of appellate counsel is to "winnow[] out weaker arguments on appeal," Jones v. Barnes, 463 U.S. 745, 751 (1983), counsel is not required to present every nonfrivolous claim on behalf of a defendant appealing his or her conviction, see Smith, 528 U.S. at 288 ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.").

Moreover, because the Appellate Division decided this issue on the merits, and because there is a strong presumption under Strickland that counsel's assistance was effective, the standard of judicial review applicable to ineffective assistance of counsel claims under § 2254(d), as noted above, is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

Under any standard of review, petitioner's *coram nobis* motion was entirely frivolous. His appellate counsel submitted an affidavit explaining why she did not raise the arguments petitioner asserts she should have raised, and her reasoning was well within the discretion of an appellate lawyer to pick the most likely issues to succeed. There was ample probable cause for the arrest since the police had video of petitioner encountering the victim right at the time of the incident; the substance of the felony complaint was irrelevant on that score, and, indeed, a

motions court had denied counsel's motion to suppress. Second, petitioner never explained what was wrong with the accusatory instruments – whether the felony complaint or the indictment – and there does not appear to be anything deficient about them.

What petitioner appears to argue is that since there was never any evidence of a completed rape, he could not have been indicted for rape, and if he should not have been indicted for rape, then the trial court's amendment of the indictment to include attempted rape was impermissible. This is a house of cards. Petitioner ignores the fact that the victim testified at trial, and presumably in the grand jury as well (although that is not in the record), that petitioner achieved penetration. Even though his attorneys convinced the trial court as a factual matter that there was reasonable doubt as to penetration, the victim's direct testimony was more than sufficient to support the first-degree rape charge.

Neither his appellate counsel nor his trial counsel was constitutionally ineffective for failing to raise points that were devoid of merit.

## CONCLUSION

The petition is denied and the case is dismissed. Because the petition raises no substantial constitutional question, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c). An appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purposes of appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
December 3, 2018